# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**SCOTT P.,[1]**

                Plaintiff,

    v.

**KILOLO KIJAKAZI,** Acting
Commissioner of Social Security,

               Defendant.

Case No. 6:20-cv-1483-SI

**OPINION AND ORDER**

H. Peter Evans, EVANS & EVANS PC, 222 NE Park Plaza Drive, Suite 113, Vancouver, WA 98684. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Heather L. Griffith, Special Assistant United States Attorneys, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Plaintiff Scott P. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

insurance benefits (DIB) under Title II of the Social Security Act (Act). For the reasons stated below, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground on which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for DIB on December 22, 2011, alleging disability beginning on October 26, 2011. AR 107. The Commissioner denied that claim on May 3, 2012 and again on reconsideration on December 10, 2012. *Id.* Plaintiff requested a hearing, and the ALJ issued a decision on October 19, 2016, finding that Plaintiff was not disabled through that date. AR 107-19. The Appeals Council denied Plaintiff's request for review on July 31, 2017. AR 126.

Plaintiff filed a new application for DIB on December 6, 2017, alleging a new disability onset date of October 20, 2016. AR 132. Plaintiff's date of birth is June 26, 1968, and he was 48 years old as of the new alleged disability onset date. AR 133. The agency denied his claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 160, 166, 169. Plaintiff appeared for a hearing before an ALJ in September 2019. AR 67. On September 30, 2019, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 13-23. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

First, the ALJ concluded that the previous ALJ's decision was not binding as to Plaintiff's second disability claim because in his second application, Plaintiff alleged an onset date of October 20, 2016, which is after the date of the prior ALJ decision. AR 13. The ALJ also concluded that Plaintiff rebutted the Ninth Circuit's presumption of nondisability from the previous ALJ's decision that would apply to the new unadjudicated period, because Plaintiff sufficiently showed new circumstances.[2] *Id.* Next, as a preliminary step for Plaintiff's DIB claim,

---

[2] After the ALJ's decision, in *Lambert v. Saul*, the Ninth Circuit addressed the conflict between its precedent establishing a presumption of continuing disability after a prior disability

the ALJ found that Plaintiff met the insured status requirements of the Act through Dec. 31, 2020. AR 16. The ALJ then proceeded to the sequential analysis.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 20, 2016. *Id.* At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of migraine headaches, status post concussion, lumbar degenerative disc/joint disease, cervical degenerative disc/joint disease, right shoulder degenerative joint disease, colitis, carpal tunnel syndrome, and vestibular dysfunction. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform:

> light work as defined in 20 CFR 404.1567(b). The claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry 10 pounds or less. The claimant can sit for 6 hours in an 8-hour day and stand or walk in combination for no more than 6 hours in an 8-hour day. The claimant can push and pull as much as he can lift and carry. Bilaterally hand controls can be operated frequently. Right overhead reaching bilaterally is limited to occasionally. Handling and fingering bilaterally could be done frequently. The ability to climb ramps and stairs is limited to only occasionally and the claimant should avoid ladders, ropes, or scaffolding. The claimant may only occasionally balance, stoop, kneel, crouch, or crawl. In terms of vision, the claimant should avoid bright lights. In addition, the claimant should avoid working around unprotected heights and moving mechanical parts nor should he be required to operate a motor vehicle for commercial purposes. The claimant should avoid vibration. Time off-task would be able to be accommodated by normal breaks.

---

determination and the Social Security Administration's interpretation of the 1983 Reform Act, which found that no such presumption was available under the statute. 980 F.3d 1266, 1268 (9th Cir. 2020). The Ninth Circuit concluded that the agency's "authoritative interpretation of the Social Security Act displaces our prior precedents on the issue of a presumption of continuing disability." *Id.* at 1275.

AR 18. Based on these limitations, at step four, the ALJ found that Plaintiff could perform his past relevant work as a storage facility rental clerk. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including electronics worker (60,400 jobs in the national economy), electrical accessories assembler (88,100 jobs in the national economy), and information travel clerk (21,700 jobs in the national economy). AR 23. The ALJ thus concluded that Plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by improperly rejecting Plaintiff's symptom testimony, improperly rejecting Dr. Charmin Sagert's medical opinion, failing to find that Plaintiff's past relevant work was a composite job, and concluding that he could perform jobs that exist in significant numbers in the national economy. Plaintiff asks the Court to remand the case for an award of benefits.

**A.  Plaintiff's Symptom Testimony**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she

has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"[3] *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case

---

[3] Defendant argues that the Ninth Circuit's "clear and convincing reasons" standard conflicts with the Act's substantial evidence standard, which the Supreme Court reaffirmed in *Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). Those two standards do not conflict. An ALJ must articulate specific, clear and convincing reasons for discounting a claimant's symptom testimony and those reasons must be supported by substantial evidence in the record. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Biestek* and stating that "the ALJ may reject [the testimony] only for 'clear and convincing' reasons supported by substantial evidence in the record").

record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ discounted Plaintiff's symptom testimony because it conflicted with Plaintiff's activities of daily living and lacked the support of objective medical evidence. AR 20-21. Substantial evidence supports these conclusions.

### 1.  Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the

activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled.").

Substantial evidence supports the ALJ's conclusion that Plaintiff's seasonal work as a landscaper conflicted with his symptom testimony. *See* AR 21. Plaintiff reported that he worked as a landscaper on a part-time basis from as late as March 2018 to June 2019. AR 78, 556, 642, 693. Plaintiff's work as a landscaper involved operating power tools all day, pulling weeds, cutting grass, and pruning. AR 78-79, 578, 580. At the hearing, however, Plaintiff testified that he was capable of "nothing" when asked if he could carry on any work. AR 74-75. Plaintiff's consistent work doing manual labor during the period of his alleged total disability conflicts with his testimony that he was capable of no work whatsoever. Plaintiff's argument that his landscaping activity does not conflict with his testimony because he had stopped his landscaping work by the time of his hearing does not negate the fact that he consistently performed manual labor after his alleged onset date and testified that he was not capable of doing any work. Substantial evidence therefore supports the ALJ's conclusion that Plaintiff's work as a landscaper conflicts with his testimony that his impairments prevented him from doing any work. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Substantial evidence also supports the ALJ's conclusion that Plaintiff's exercise routine conflicted with his symptom testimony. AR 21. In 2018 and 2019, Plaintiff went to the gym two to five times a week for one to one and a half hours each time. AR 594, 601, 605, 608, 622, 632, 708, 724, 734. He consistently reported that his exercise routine consisted of completing two miles on a stationary bike "in under 5 minutes on 14 resistance" to warm up, followed by strength training exercises on weightlifting machines with "increased weight," which included leg extensions, leg curls, shoulder exercises, bench presses, tricep exercises, and lateral pull downs. AR 594, 601, 606, 608, 622, 632, 708, 724-25, 734. In June 2019, he reported that he set two fitness records for himself due to his frequent gym visits. AR 708. In July 2019, he reported that he set four fitness records due to his frequent gym visits. AR 725. The ALJ's interpretation of this evidence as conflicting with Plaintiff's testimony that he was totally disabled is rational and must be upheld. *See Burch*, 400 F.3d at 679.

The conflict between Plaintiff's daily living activities and his testimony is a clear and convincing reason supported by substantial evidence to discredit his symptom testimony. *Molina*, 674 F.3d at 1113 ("Even where [daily living] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). The ALJ therefore did not err by discounting Plaintiff's testimony.

### 2. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the

intensity and persistence of your pain or other symptoms or about the effect your symptoms have

on your ability to work solely because the available objective medical evidence does not

substantiate your statements").

Substantial evidence supports the ALJ's conclusion that the objective medical evidence

did not support Plaintiff's testimony. Plaintiff stated that he is plagued with "chronic back pain"

and that his back pain is "horrible." AR 365, 556. Plaintiff also testified that his degenerative

disc disease had been "plaguing [him] for many, many years" and prevented him from doing

landscaping work. AR 78. Plaintiff's treatment notes, however, document that Plaintiff's

degenerative disease is "mild." AR 405, 437-38. Plaintiff's diagnosis of mild degenerative disc

disease is an adequate basis to conclude that medical evidence does not support Plaintiff's

testimony. *See Burch*, 400 F.3d at 681 (concluding that documentation of mild degenerative disc

disease did not support the plaintiff's testimony of severe back pain).

Plaintiff also testified that his headaches are so severe that they incapacitate him for days

at a time. AR 95. As the ALJ noted, however, Plaintiff has not submitted any evidence of a CT

scan or other test to support this testimony. Substantial evidence therefore supports the ALJ's

conclusion that Plaintiff's testimony about his headaches is not supported by objective medical

evidence. Although a lack of medical evidence may not serve as the only basis to discredit

symptom testimony, here it provides additional support for the ALJ's decision to discredit

Plaintiff's testimony.

**B.  Dr. Sagert's Testimony**

Plaintiff argues that the ALJ improperly discounted the medical opinion of his treating

physician, Dr. Sagert. Because Plaintiff filed his application for benefits after March 27, 2017,

Federal Regulation 20 C.F.R. § 404.1520c governs how the ALJ evaluates medical opinion

evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed.

Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions but rather determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). The new regulations purport to eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. The new regulations purport to eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. Instead, the ALJ primarily considers the "supportability and "consistency" of the opinions. *Id.* § 404.1520c(b)-(c). Supportability is determined by whether the opinion is supported by relevant objective medical evidence and the source's explanation for the opinion. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The ALJ is not required to explain how he or she considered other secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3). The Court must also continue to consider whether substantial evidence supports the ALJ's analysis. *See* 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

 Plaintiff contends that even under these new regulations, the ALJ must still provide specific and legitimate reasons supported by substantial evidence for discounting medical opinions because that standard is required under the statutory "substantial evidence" requirement and not the regulatory framework of the hierarchy of medical opinions. The Commissioner does not dispute that substantial evidence must support the ALJ's decision. The Commissioner argues

that because the new regulations eliminate the hierarchy of medical opinions that existed under

the old regulations, the case law setting different requirements to reject medical opinions based

on that hierarchy (such as "specific and legitimate reasons" for contradicted examining

physicians) is now inapposite.

This issue was recently addressed by another district court:

> In 2017, the Commissioner issued new regulations governing how
> ALJs are to evaluate medical opinions. *See* Revisions to Rules
> Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-
> 01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations,
> for claims filed on or after March 27, 2017, the Commissioner
> "will not defer or give any specific evidentiary weight . . . to any
> medical opinion(s) . . . including those from [the claimant's]
> medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The
> ALJ must nonetheless explain with specificity how he or she
> considered the factors of supportability and consistency in
> evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)-(b),
> 416.920c(a)-(b). That explanation must be legitimate, as the Court
> will not affirm a decision that is based on legal error or not
> supported by substantial evidence. *See Trevizo v. Berryhill*, 871
> F.3d 664, 674 (9th Cir. 2017). Thus, the regulations require the
> ALJ to provide specific and legitimate reasons to reject a doctor's
> opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-
> 461 RSM, 2020 WL 6581012 at *3 (W.D. Wash. Nov. 10, 2020)
> (unpublished opinion) (finding that the new regulations do not
> clearly supersede the "specific and legitimate" standard because
> the "specific and legitimate" standard refers not to how an *ALJ*
> should weigh or evaluate opinions, but rather the standard by
> which the *Court* evaluates whether the ALJ has reasonably
> articulated his or her consideration of the evidence).

*Terry B. v. Acting Comm'r of Soc. Sec.*, 2021 WL 6072708, at *2 (W.D. Wash. Dec. 23, 2021)

(alterations and emphasis in original).

The new regulations require an ALJ to evaluate medical opinion evidence based

primarily on consistency and supportability irrespective of whether a "treating," "examining," or

"reviewing" source gave the opinion. That does not mean, however, that the ALJ does not need

to provide specific and legitimate reasons for why the medical opinion is or is not consistent with

or supported by the evidence. *See Carrie R. v. Comm'r*, 2022 WL 35777, at *4 (D. Or. Jan. 4,

2022) ("The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw

relating to medical evidence, which remain binding on this Court. For example, it remains true

that ALJs may not cherry-pick evidence in discounting a medical opinion. Nor may ALJs

dismiss a medical opinion without providing a thorough, detailed explanation for doing so. . . . In

other words, while the new regulations eliminate the previous hierarchy of medical opinion

testimony that gave special status to treating physicians, ALJs must still provide sufficient

reasoning for federal courts to engage in meaningful appellate review." (citations omitted)). Until

the Ninth Circuit provides further guidance on this issue, the Court agrees that the ALJ must still

provide specific and legitimate reasons in analyzing medical opinions under the new

regulations.[4]

      Dr. Sagert offered an opinion on Plaintiff's impairments in the form of two letters—one

dated September 17, 2015 and one dated June 12, 2019. AR 545-46. In the 2015 letter,

Dr. Sagert wrote that it is "unlikely that [Plaintiff] will be able to tolerate full time work and will

need accommodation." AR 545. In the 2019 letter, Dr. Sagert wrote that Plaintiff's headaches

"interfere with his ability to work fulltime." AR 546. The ALJ rejected these opinions in part

because they were vague, do not assess functional limitations, and opine on an issue reserved for

the Commissioner. AR 21. Dr. Sagert's 2015 letter fails to identify Plaintiff's limitations or

explain why Plaintiff will not be able to tolerate full-time work. Further, these two comments are

not statements of any functional limitation or assessments of functional capacity but

are vague and nonspecific suggestions that the ALJ was not required to accept. *See Valentine v.*

---

[4] At this time, the Court expresses no opinion about the validity of the other standards for
reviewing medical evidence previously established by the Ninth Circuit such as the "clear and
convincing" standard for considering uncontradicted evidence by a treating physician.

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (noting that when a doctor's observation is a recommendation, it is "neither a diagnosis nor statement of [the claimant's] functional capacity" and an ALJ "[does] not err by excluding it from the RFC"). The ALJ therefore did not err in rejecting Dr. Sagert's general opinion that Plaintiff's limitations interfere with his ability to work full-time.

The ALJ, however, did not address Dr. Sagert's statement in her 2019 letter that "[t]riggers for [Plaintiff's] headaches are stress, screens and flickering lights." AR 546. This opinion is not vague and does not opine on any issue reserved for the Commissioner, namely, whether Plaintiff is disabled. But even if the ALJ erred by not incorporating these limitations into Plaintiff's RFC, any error was harmless because the Vocational Expert (VE) identified two jobs available to Plaintiff that exist in significant numbers in the national economy that do not involve screens or flickering lights. *See* AR 23 (stating the VE testified that Plaintiff could perform the work of an electronics worker and electrical accessories assembler); Dictionary of Occupational Titles (DOT) 726.687-010 (describing the duties of an electronics workers, which do not involve screens or flickering lights); DOT 729.687-010 (describing the duties of an electrical accessories assembler, which do not involve screens or flickering lights). The ALJ therefore did not commit harmful error by discounting the medical opinion of Dr. Sagert.

## C.  Plaintiff's Past Relevant Work

Plaintiff argues that the ALJ erred by failing to list Plaintiff's past relevant work as a composite job that involved duties of both a maintenance worker and storage facility rental clerk. Plaintiff argues that the ALJ should have deferred to the finding of the ALJ that presided over Plaintiff's previous disability determination hearing held on September 30, 2014. Plaintiff explains that the ALJ in the 2014 hearing asked questions to both Plaintiff and the vocational expert about whether Plaintiff's past work was a composite job. But that ALJ's decision, dated

October 19, 2016, did not list Plaintiff's past work as a composite job. *See* AR 118. The decision

lists Plaintiff's past relevant work as including distinct positions as a maintenance worker and

storage facility rental clerk. *Id.* Further, the ALJ made alternate findings at step five. The ALJ

thus did not err by not listing Plaintiff's past relevant work as a composite job.

## D.  The ALJ's Step Five Analysis

Plaintiff argues that the ALJ's step five analysis is flawed because the electronics worker

position conflicts with the state agency medical expert opinions, the electrical accessories

assembly position conflicts with the RFC, and the remaining position does not have sufficient

positions in the national economy to constitute a "significant" number. The latter argument is

reliant on the Court accepting the first two arguments.

Plaintiff's first argument is that the ALJ failed to incorporate the opinions of Drs. Lloyd

Wiggins and Thomas Davenport into his RFC and as a result, erroneously concluded he could

work as an electronics worker. Plaintiff contends that Drs. Wiggins and Davenport's opinion that

Plaintiff should "avoid even moderate exposure" to hazards means he should avoid exposure to

toxic or caustic chemicals. Because an electronics worker is exposed to toxic or caustic

chemicals, Plaintiff argues, the ALJ therefore erred by concluding Plaintiff could work as an

electronics worker. It is not clear, however, that Drs. Wiggins and Davenport's use of the word

"hazards" included toxic or caustic chemicals. In their report, Drs. Wiggins and Davenport

specified that the types of hazards Plaintiff should avoid are "machinery, heights, etc." AR 142,

155. Because Drs. Wiggins and Davenport specified that the hazards Plaintiff should avoid are

machines and heights, it does not necessarily follow that they also concluded he should avoid

toxic or caustic chemicals. The ALJ's interpretation of the evidence is rational, and the ALJ

therefore did not err by failing to include in Plaintiff's RFC a limitation on exposure to toxic or

caustic chemicals. *See Burch*, 400 F.3d at 679.

Next, Plaintiff argues that the ALJ erroneously concluded Plaintiff could perform the work of an assembler of electrical accessories because the job's requirement to assemble and test mechanical parts conflicts with the RFC limitation to avoid exposure to moving mechanical parts. This argument is not persuasive. The DOT entry for electrical accessories assemblers specifically notes that the job does not involve exposure to mechanical moving parts. DOT 729.687-010, *available at* 1991 WL 679733 ("Moving Mech. Parts: Not Present – Activity or condition does not exist."). Additionally, the description of job duties for an assembler of electrical accessories makes clear that the job involves assembly of small electrical parts and testing those parts and does not otherwise indicate that the job involves exposure to heavy machinery or other mechanical equipment. *See id.* The ALJ therefore did not err by failing to find that the work of an assembler of electrical accessories involved exposure to moving mechanical parts.

Because the Court has rejected Plaintiff's first two step five arguments, Plaintiff's final argument fails. Plaintiff argues that the position of travel clerk, with 21,700 jobs available, is insufficient by itself to offer a significant number of jobs in the national economy. Because the Court accepts all three positions found by the ALJ, or possibly only electronics worker (60,400 jobs available) and electrical accessories assembler (88,100 jobs available) if travel clerk is discounted based on potential flickering screens, Plaintiff's argument is inapposite. *See Moncada v. Chater*, 60 F.3d 521, 529 (9th Cir. 1995) (stating that 64,000 jobs available nationwide are jobs available in "significant numbers" as the Act requires).

/ / /

/ / /

/ / /

/ / /

PAGE 18 – OPINION AND ORDER

**CONCLUSION**

The Court AFFIRMS the Commissioner's decision that Plaintiff is not disabled.

**IT IS SO ORDERED**.

DATED this 3rd day of February, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge